IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIRRELL WILLIAMS,                    :
     Petitioner                    :
                                   :          No. 1:20-cv-931
     v.                            :
                                   :          (Judge Rambo)
GEORGE A. MILLER, *et al.*,          :
     Respondents                   :

## MEMORANDUM

On June 9, 2020, *pro se* Petitioner Tirrell Williams ("Petitioner"), who is presently incarcerated at the State Correctional Institution in Waymart, Pennsylvania ("SCI Waymart"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) After receiving two extensions of time to do so (Doc. Nos. 8, 9, 11, 12), Respondents filed their response on September 21, 2020 (Doc. No. 14) and filed the appendix on September 25, 2020 (Doc. No. 16). Petitioner filed a traverse on October 1, 2020. (Doc. No. 18.) Accordingly, Petitioner's § 2254 petition is ripe for disposition. For the following reasons, the Court will deny Petitioner's § 2254 petition.

## I.    BACKGROUND

### A.    Procedural History

On October 24, 2013, following a jury trial in the Court of Common Pleas for Lycoming County, Pennsylvania, Petitioner was found guilty of two counts of robbery, one count of theft by unlawful taking, and one count of simple assault. *See*

*Commonwealth v. Williams*, Docket No. CP-41-CR-0002010-2012 (Lycoming Cty.

C.C.P.).[1]  The Superior Court of Pennsylvania set forth the background of the case

as follows:

> On the night of January 5, 2012, Michael Stewart (Stewart) met Amy Baird (Baird) at a bar, where Stewart had two pitchers of beer and Baird had more than three drinks.  After spending some time at the bar, Stewart and Baird went to Baird's house.  At the house, Baird told Stewart that she wanted marijuana, and Stewart gave Baird money to pay for marijuana.  Baird used Stewart's phone to order marijuana.  An individual, who was not [Petitioner], came to Baird's house and sold Baird a bag of drugs.  About thirteen minutes later, Baird and Stewart realized that the bag contained a drug that was not marijuana.  Baird again used Stewart's phone to call the individual who had originally delivered the drugs.  Baird asked the individual to come back to the house with marijuana.  When the individual came back, he was with [Petitioner] and two other people.  The individual, [Petitioner], and the two other people will be referred to as the group.

> Baird testified that she and [Petitioner] went to the upstairs of the house.  A short time later, they returned downstairs, where they saw the three others in the group and Stewart in the kitchen.  Baird testified that she again went upstairs, this time alone.  Baird testified that while she was upstairs, she heard a commotion downstairs.  Therefore, she went downstairs, where she saw the group stomping and punching Stewart, while he was on the kitchen floor.  As mentioned above, the group included [Petitioner].

> Stewart testified that the group surrounded him while he was in the kitchen cleaning up hot oil.  He testified that while he was talking with one member of the group, another member would start talking to him.  Stewart testified that he was talking to [Petitioner] when he heard

---

[1] In addition to the § 2254 petition, the Court utilized the Unified Judicial System of Pennsylvania Web Portal to review the relevant dockets for Petitioner's criminal proceedings.  A district court may take judicial notice of state court records, as well as its own.  *See Minney v. Winstead*, No. 2:12-cv-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988).

another member of the group stay, "Yo partner, let me talk to you." Stewart testified that he turned to talk to the member who made the "partner" comment and was then struck in the back of the head by [Petitioner]. Stewart testified that the group beat him and punched him. One member of the group hit him in the head with a glass bottle, which caused him to fall to the floor. Stewart testified that he did not know which member hit him with the bottle. Stewart testified that while he was on the floor, the group kicked him and stomped him all over his body. Stewart testified that he rolled up into the fetal position to protect himself.

Stewart testified that[,] while he was on the floor, one member of the group said, "Stand this [MF] up, so I can shoot him." Stewart did not know which member said this, but he felt the members trying to grab his arms to stand him up. Stewart testified that he did not let the group stand him up because he was scared that he would be shot and killed. Stewart testified that one member of the group poured hot oil on him. Stewart testified that he did not know which member poured the oil on him. After feeling the hot oil, Stewart got up and ran into the living room.

Stewart testified that[,] while he was on the floor, he could feel members of the group going through the pockets of his pants. He testified that[,] before the incident, he had his wallet and cell phone in his pockets. Stewart testified that after the incident, he no longer had his wallet and cell phone.

After the incident, Baird called [the] police. Office Mark Lindauer (Lindauer) of the Williamsport Bureau of Police responded to the call. Lindauer noticed that there was grease and broken glass on the kitchen floor.

Stewart was taken to the hospital by ambulance. As a result of the incident, he had a one[-]inch laceration on his head and a headache for three to four days. In addition, he was bruised and stiff for a week.

(Doc. No. 16 at 254-55.)  On March 27, 2014, the trial court sentenced Petitioner to serve a minimum of six (6) and a maximum of twelve (12) years' incarceration. (*Id.*

at 255.)  Petitioner subsequently filed timely post-sentence motions challenging the sufficiency of the evidence and arguing that the verdict was contrary to the weight of the evidence.  (*Id.* at 194-97.)  On July 28, 2014, the trial court denied Petitioner's post-sentence motions.  (*Id.* at 200-06.)

Petitioner appealed to the Superior Court of Pennsylvania, arguing that there was insufficient evidence to support his robbery conviction and, in the alternative, that the verdict was contrary to the weight of the evidence.  (*Id.* at 253.)  On March 20, 2015, the Superior Court affirmed Petitioner's judgment of sentence.  (*Id.* at 253-66.)  On December 29, 2015, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  (*Id.* at 313.)

On April 15, 2016, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas for Lycoming County.  (*Id.* at 315-94.)  Counsel was appointed to represent Petitioner, and on July 21, 2017, counsel filed a petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), alleging that there was no merit to Petitioner's PCRA petition.  (Doc. No. 16 at 396-404.)  On October 6, 2017, the PCRA court granted counsel's motion to withdraw and issued a notice that it intended to dismiss Petitioner's PCRA petition.  (*Id.* at 406-16.)  On October 31, 2017, Petitioner filed a motion to supplement.  (*Id.* at 418-21.)  On November 8, 2017, the PCRA court treated Petitioner's motion to supplement as his

response to the notice of intent to dismiss and dismissed the PCRA petition.  (*Id.* at 423-24.)

Petitioner timely appealed to the Superior Court, arguing *inter alia*, that he never received the PCRA court's order granting counsel's motion to withdraw and providing notice of its intent to dismiss his PCRA petition.  *See Commonwealth v. Williams*, No. 431 MDA 2018, 2018 WL 4997992, at *2-3 (Pa. Super. Ct. Oct. 16, 2018).  The Superior Court concluded that the record supported Petitioner's contention and remanded the matter to the PCRA court for further proceedings.  *Id.* at *4.  On March 6, 2019, the PCRA court again granted counsel's motion to withdraw and issued a notice that it intended to dismiss Petitioner's PCRA petition. (Doc. No. 16 at 428-33.)  Petitioner filed a response to the notice.  (*Id.* at 435.)  On March 27, 2019, the PCRA court dismissed Petitioner's PCRA petition.  (*Id.* at 437.)

Petitioner again appealed to the Superior Court.  On appeal, Petitioner raised the following claims of ineffective assistance: (1) trial counsel failed to file a motion to suppress; (2) trial counsel failed to object to and move for a new jury pool; (3) trial counsel failed to present evidence of police reports and other prior testimony at trial; (4) trial counsel failed to question the Commonwealth's witnesses about the possibility of leniency; and (5) trial counsel failed to present a proper insufficient evidence claim or challenge all of Petitioner's convictions on direct appeal. *Commonwealth v. Williams*, 220 A.3d 1086, 1090 (Pa. Super. Ct. 2019).  The

Superior Court affirmed the dismissal of Petitioner's PCRA petition on October 8, 2019.  *Id.* at 1096.  On April 30, 2020, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  (Doc. No. 16 at 572.)  This Court received Petitioner's § 2254 petition on June 9, 2020.  (Doc. No. 1.)

### B.    Habeas Claims Presented

Petitioner raises the following claims for relief in his § 2254 petition:

1. Trial counsel rendered ineffective assistance by failing to impeach Baird and Stewart with statements contained within the police reports;

2. Trial counsel rendered ineffective assistance by failing to question Baird about the possibility of leniency during trial;

3. Counsel rendered ineffective assistance by failing to present a proper claim regarding sufficiency of the evidence; and

4. Cumulative error.

(Doc. No. 1 at 15-17.)

## II.    STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining

and enforcing the criminal law.   In criminal trials they also hold the initial responsibility for vindicating constitutional rights.   Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

For claims of ineffective assistance of counsel raised in a habeas petition, the Court must consider the two components to demonstrating a violation of the right to effective assistance of counsel as set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell

below an objective standard of reasonableness." *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694.  The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.  *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

## III.   DISCUSSION

### A.   Exhaustion and Procedural Default

The Court must first determine whether Petitioner's grounds for relief presented in his § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims. Respondents maintain that Grounds One and Four are procedurally defaulted.  (Doc. No. 14 at 15-16, 19-20.)

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under § 2254(c), a petitioner will

not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further

relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). The district court then analyzes the claims under the procedural default doctrine. *See id.* The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In *Cone v. Bell*, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a statelaw ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Id.* at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted

by a state prisoner.  A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'"  *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)).  The requirements of independence and adequacy are distinct.  *See id.*  A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims."  *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004).  A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default."  *See Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750.  In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. *See Werts v. Vaughn*, 228 F.3d 178, 192

(3d Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *See United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *See Schlup v. Delo*, 513 U.S. 298, 326 (1995).  Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. *See id.*  In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *See id.* at 225 (citing *Hummard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)).  If a

petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused, and the Court may review the merits of the claim presented. *See id.*

### 1.   Ground One

As his first ground for relief, Petitioner faults trial counsel for not introducing witnesses' police report statements during trial. (Doc. No. 1 at 15.) According to Petitioner, trial counsel should have impeached Baird and Stewart with these reports because they contradicted their testimony on several occasions. (*Id.* at 21.) Respondents maintain that Ground One is procedurally defaulted because the Superior Court deemed it waived. (Doc. No. 14 at 15-16.)

With respect to this claim, the Superior Court stated:

> We first address a procedural issue, namely waiver, concerning this appeal. Pursuant to Pa. R. A. P. 1925(b)(4)(ii):
>
> > [An appellant's Rule 1925(b)] Statement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue to be raised for the judge**. The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.
>
> Pa. R. A. P. 1925(b)(4)(ii) (emphasis added). [Petitioner's] Rule 1925(b) statement sets forth, in relevant part, the following issues: (1) "Counsel's failure to present witnesses' police reports at tr[ia]l[; and] (2) "Counsel's failure to question [C]ommonwealth's witnesses about leniency." Pa. R. A. P. 1925(b) Concise Statement of Matters Complained of on Appeal, 4/25/19. The trial court has not addressed the police report issue in its Rule 1925(a) opinion due to the vagueness of [Petitioner's] concise statement. Thus, we find it waived.

*Williams*, 220 A.3d at 1090-91.

Respondents assert that Petitioner has procedurally defaulted Ground One by "fail[ing] to specifically raise this issue upon appeal."  (Doc. No. 14 at 16.) Respondents maintain that Petitioner "provided a general, non-specific 1925(b) statement" and "failed to plead with specificity as to which witnesses he was referring to." (*Id.*)  Petitioner argues that the Superior Court should not have deemed this issue waived because Baird and Stewart were the only two witnesses who made police reports against him and, therefore, "any competent [j]udge would have known Petitioner was not referring to [the officers who testified]."  (Doc. No. 1 at 15.)

The Court agrees with Respondents that Ground One is procedurally defaulted because the Superior Court relied upon an independent and adequate state ground to conclude that this issue was waived on appeal.  The Superior Court may find waiver when a concise statement pursuant to Rule 1925(b) is too vague.  *See Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. Ct. 2011); *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. Ct. 2001) (concluding that the appellant's "issue raised on appeal is waived because Appellant's Concise Statement was too vague for the trial court to identify and address the issue to be raised on appeal"); *see also Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. Ct. 2006) (noting that "a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all").

Courts within the Third Circuit have concluded that this requirement is an independent and adequate state ground, and this Court agrees. *See, e.g.*, *Robinson v. Smith*, No. 17-cv-1023, 2018 WL 3385189, at \*9 (E.D. Pa. May 30, 2018), *Report and Recommendation adopted*, 2018 WL 3374810 (E.D. Pa. July 10, 2018); *Pugh v. Overmeyer*, No. 15-cv-364, 2017 WL 3701824, at \*10 (M.D. Pa. Aug. 28, 2017); *Manley v. Gilmore*, No. 15-2624, 2016 WL 9280154, at \*9 (E.D. Pa. Feb. 24, 2016), *Report and Recommendation adopted*, 2017 WL 2903050 (E.D. Pa. July 7, 2017); *Miles v. Tomaszewski*, No. 04-3157, 2004 WL 2203726, at \*3 (E.D. Pa. Sept. 14, 2004), *Report and Recommendation adopted*, 2004 WL 2455532 (E.D. Pa. Oct. 27, 2004).

Consequently, because Ground One is procedurally defaulted, the Court can entertain the merits of this claim only if Petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. Petitioner, however, advances no compelling argument to establish that cause for the default exists or that a fundamental miscarriage of justice will occur if this Court does not consider his claim. *See Coleman*, 501 U.S. at 750. Accordingly, federal review of Ground One is barred, and the Court will dismiss that claim for relief.

### 2.   Ground Four

As his fourth ground for relief, Petitioner asserts a standalone claim of cumulative error. (Doc. No. 1 at 17, 29.) "The cumulative error doctrine allows a

petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014). The Third Circuit has held that a "claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief." *Id.* at 543.

In the instant case, the record is clear that Petitioner never presented a claim of cumulative error to the state courts. Petitioner, however, cannot return to state court to file a PCRA petition because the PCRA's statute of limitations has expired. *See* 42 Pa. Cons. Stat. § 9545(b) (noting that a PCRA petition must "be filed within one year of the date the judgment becomes final" and that "a judgment becomes final at the conclusion of direct review").[2] Thus, because Ground Four was not raised in the state courts and Petitioner can no longer return to state court to present it, Ground Four is procedurally defaulted, as well. Petitioner, however, advances no compelling argument to establish that cause for the default exists or that a fundamental miscarriage of justice will occur if this Court does not consider his

---

[2] While § 9545 sets forth limited exceptions to this rule, none is applicable to Petitioner's claims. Petitioner does not make any allegations that the Government in any way interfered with his ability to file a PCRA petition or with his direct appeal, and he does not rely on a constitutional right newly recognized by the United States Supreme Court or the Supreme Court of Pennsylvania. *See* 42 Pa. Cons. Stat. § 9545(b)(1)(i), (iii). Petitioner also does not allege that he could not have discovered the basis of these claims through the exercise of due diligence. *See id.* § 9545(b)(1)(ii).

claim. *See Coleman*, 501 U.S. at 750. Accordingly, federal review of Ground Four is barred, and the Court will dismiss that claim for relief.

## B.   Merits of Petitioner's Remaining Claims

### 1.   Ground Two

In Ground Two, Petitioner asserts that trial counsel rendered ineffective assistance by failing to question Baird about the possibility of leniency during Petitioner's trial. (Doc. No. 1 at 15.) Petitioner alleges that Baird was incarcerated at the time of trial and that counsel should have questioned her as to that fact. (*Id.* at 16.) He maintains that Baird's testimony affected the outcome of his trial and, therefore, he is entitled to relief due to counsel's ineffectiveness. (*Id.* at 22-23.)

With respect to this claim, the Superior Court stated:

> [Petitioner] next contends that counsel was ineffective for failing to question Commonwealth witness, Amy Baird, regarding her bias in favor of the prosecution where she was on probation at the time of the alleged incident, had been granted work release from prison sixteen days before she testified against [Petitioner], and had not been charged with drug possession charges in the instant case.

> "[A] witness may be impeached on cross-examination to show the witness' bias, dishonesty, or defects in h[er] ability to observe, remember or recount the matter about which [s]he has testified." *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236, 241 (1982). "[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against h[er] within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." *Commonwealth v. Evans*, 5111 Pa. 214, 512 A.2d 626, 631 (1986). Our Court has held that "[a]n order placing a criminal defendant on probation does not constitute a final disposition of a

criminal case against him" as probation is a conditional order" placing the defendant under the supervision and control of the court . . . to be followed by a final judgment of discharge [] if the conditions of his probation are complied with [] or by a final judgment of sentence on his being brought before the court following a violation of the terms of his probation[.]" *Commonwealth v. Buksa*, 440 Pa. Super. 305, 655 A.2d 576, 581 (1995) (citation omitted).

As [Petitioner] points out in his brief, witness Baird had already been convicted and was serving her sentence in Lycoming County at the time she testified against him at trial. Therefore, at the time she testified, Baird did not have "outstanding criminal charges" lodged against her. However, Baird was on work release at the time of trial. While the law clearly designates an order of probation as a "non-final criminal disposition," we have found no authority in this Commonwealth holding the same with regard to work release. We conclude, however, that the two should be treated similarly.

Work release is one of many county sentencing programs available as "Intermediate Punishment" under our Commonwealth's administrative code. *See* Pa. Code § 451.124. In *Commonwealth v. Melius*, 100 A.3d 682 (Pa. Super. 2014), our Court noted that:

> [T]he intent of the legislature in adopting county intermediate punishment programs was to give trial courts another sentencing option that would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of nonviolent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem. **The revocation of a county intermediate punishment sentence is equivalent to the revocation of probation**.

*Id.* at 685 (citation omitted) (emphasis added). Because a county intermediate punishment such as work release has the same potential to be revoked as a sentence of probation, we hold that an order of work release is a "non-final criminal disposition" for purposes of cross-examining a witness for possible bias. Accordingly, having determined

that there was a non-final disposition in Lycoming County against Baird at the time she testified at [Petitioner's] trial, it was error for counsel to fail to make the jury aware of any possible prosecution bias she may have had; counsel should have "explore[d her] motive and potential bias." *Buksa*, 655 A.2d at 581. Despite reaching this conclusion, we recognize that a new trial is only required under the circumstances if the error can be shown to have had an impact on the outcome of [Petitioner's] case. *Id.* at 581 (citation omitted); *Ali, supra* (to prove ineffectiveness of counsel, appellant must show reasonably probability that outcome of the proceedings would have been different).

Instantly, Baird testified that after she and the victim met at a bar, they went back to her house to complete a marijuana purchase. Baird called an individual named "Rich" to come to her house and he brought three other men with him, one of whom was [Petitioner]. While Baird was upstairs in the bathroom, she heard a commotion downstairs. Upon descending the staircase, Baird saw the victim, lying on the floor, being kicked and punched by the four men who were "all huddled around [the victim]." N.T. Trial, 9/24/13, at 102. While [Petitioner] was one of the four men present in the home besides Baird and the victim, Baird testified that she never saw [Petitioner] throw the initial punch or specifically kick the victim. *Id.* at 104.

In addition to Baird, the victim also testified that [Petitioner] struck him in the back of the head, *id.* at 44, and that the perpetrators "proceeded to beat [him] and punch [him] and kick [him] and [break] a bottle upside [his] head." *Id.* During the assault, the victim testified that "they were going through [his] pockets and everything," *id.* at 45, and took his wallet and cell phone. Agent Peacock testified that [Petitioner] admitted to him that he had participated in the assault on the victim, in connection with a drug deal, and that he did so to take [drugs] back. *Id.* at 127-29. [Petitioner], however, denied having stolen the victim's wallet or cell phone. *Id.* at 129.

Because [Petitioner], himself, admitted to having assaulted the victim and because Baird testified that she did not see [Petitioner] throw the first punch or specifically kick and strike the victim, we do not find that counsel's error had an impact on the outcome of the case. While the jury may have been entitled to know that Baird was on house arrest for an unrelated conviction at the time of [Petitioner's] trial, any

> perceived bias for the prosecution would be unlikely where Baird's own
> testimony was less damning than the defendant's own admissions.
> *Evans, supra*.  Thus, the error was harmless and this claim has no merit.

*Williams*, 220 A.3d at 1093-95.

Upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent.  Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable.  When assessing prejudice, "a court 'must consider the totality of the evidence before the judge or jury.'"  *Ross v. Dist. Att'y of the Cty. of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012) (quoting *Strickland*, 466 U.S. at 695).  With respect to the simple assault conviction, Petitioner himself admits that he assaulted Stewart. (Doc. No. 1 at 22.)  While he asserts that he "stopped after his initial punch and kicks, due to the other men who joined in" (*id.*), the cessation of such action does not negate his liability.  *See* 18 Pa. Cons. Stat. § 2701(a)(1) (noting that an individual is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another").  Moreover, the Court cannot agree with Petitioner that Baird's testimony "made [him] an active participant at the time of the theft" because Baird never testified as to the theft of items from Stewart's pockets during the assault.  Upon consideration of the totality of the evidence presented to the jury, the Court concludes that the Superior Court did not err in determining that

Petitioner has not demonstrated prejudice from counsel's failure to question Baird concerning leniency and possible prosecution bias. Petitioner has not met his burden of demonstrating that, but for counsel's failure to so question, the result of his trial would have been different. Accordingly, Petitioner's first ground for relief must be dismissed.

### 2.    Ground Three

As his third ground for relief, Petitioner faults counsel for not presenting a "proper" sufficiency of the evidence challenge with respect to his convictions for robbery and theft by unlawful taking. (Doc. No. 1 at 16-17.) According to Petitioner, counsel should have argued that his convictions for such cannot stand because the jury acquitted him of conspiracy. (*Id.* at 25.)

The Superior Court addressed Petitioner's claim on both direct appeal and in his appeal from the dismissal of his PCRA petition. On direct appeal, Petitioner challenged the sufficiency of the evidence for his robbery conviction pursuant to 18 U.S.C. § 3701(a)(1)(ii). (Doc. No. 16 at 256.) With respect to such, the Superior Court stated:

> When examining a challenge to the sufficiency of evidence:
>
> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the

fact-finder['s].   In addition, we note that the facts and
circumstances established by the Commonwealth need not
preclude every possibility of innocence.   Any doubts
regarding a defendant's guilt may be resolved by the fact-
finder unless the evidence is so weak and inconclusive that
as a matter of law no probability of fact may be drawn
from the combined circumstances.   The Commonwealth
may sustain its burden of proving every element of the
crime beyond a reasonable doubt by means of wholly
circumstantial evidence.   Moreover, in applying the above
test, the entire record must be evaluated and all evidence
actually received must be considered.   Finally, the [trier]
of fact[,] while passing upon the credibility of witnesses
and the weight of the evidence produced, is free to believe
all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)
(quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super.
2005)).

. . .

        "A person is guilty of robbery if, in the course of committing a
theft, he threatens another with or intentionally puts him in fear of
immediate serious bodily injury."   18 Pa. C.S. § 3701(a)(1)(ii).   In
support of his evidentiary insufficiency argument, [Petitioner] avers as
follows:

        [T]he Commonwealth failed to present any evidence that
        [Petitioner] committed or attempted to commit a theft.
        The only evidence the Commonwealth presented was that
        Stewart testified that someone's hand went through his
        pockets, and that after the episode, he could not find his
        phone.   He could not identify whose hands they were.
        Even looking at the evidence in a light most favorable to
        the Commonwealth, those facts alone are not sufficient to
        find [Petitioner] guilty of robbery.   Stewart did not testify
        whose hands were going through his pockets.   The police
        officer who responded to the scene did not even
        investigate any missing items.   Furthermore, there was no

23

testimony that any of the alleged missing items were found on [Petitioner] or any of the other men who were in the apartment.  Mr. Stewart was certainly assaulted, and what he went through was certainly terrifying, but there is simply no evidence that [Petitioner] took even a substantial step toward[] committing a theft.

Similarly, even if there was a theft, there is not sufficient evidence that [Petitioner] threatened or placed Stewart in fear of immediate serious bodily injury.  There is no evidence that [Petitioner] personally poured the hot oil on him.  There is no evidence that [Petitioner] was the person that said, "stand him up so I can shoot him."  Simply put, when you combine all of the aforementioned facts, even doing so in the light most favorable to the Commonwealth, the combination fails to sufficiently prove beyond a reasonable doubt that [Petitioner] committed the crime of robbery.

Brief for [Petitioner] at 14.

Curiously, in challenging only his conviction for robbery under subsection 3701(a)(1)(ii), [Petitioner] all but concedes that he was guilty, as a principal or an accomplice, of the other charges of which he was convicted-*i.e.*, robbery pursuant to subsection 3701(a)(1)(iv) ("if, in the course of committing a theft, he . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury"), simple assault, and theft by unlawful taking. That is to say, despite the fact that he now contests, *inter alia*, the sufficiency of the evidence to establish that a theft even occurred, he does not contest the sufficiency of the evidence of theft by unlawful taking or to establish his other unchallenged robbery charge, which, of course, also could be established only if a theft occurred.  *See* 18 Pa. C.S. § 3701(a)(1)(iv).

The Commonwealth, unlike the trial court, emphasizes that the jury was instructed on accomplice liability and could properly have convicted [Petitioner] on that basis alone.  The statute governing accomplice liability provides, in relevant part, as follows:

**(a) General rule.**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legall[y] accountable, or both.

**(b) Conduct of another.**—A person is legally accountable for the conduct of another person when:

* * * *

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

* * * *

(ii) aids or agrees or attempts to aid such other person in planning or committing it . . .

* * * *

**(d) Culpability of accomplice.**—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa. C.S. § 306.

This Court has elaborated on these principles as follows:

"A person is legally accountable for the conduct of another person when he is an accomplice of that person in the commission of [an] offense." *Commonwealth v. Orlowski*,

481 A.2d 952, 960 (Pa. Super. 1984); *see* 18 Pa. C.S. § 306.

> An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey*, 439 A.2d 151, 158 (Pa. Super. 1981); *see* 18 Pa. C.S. § 306; *see also Commonwealth v. Jones*, 247 A.2d 624, 626 (Pa. Super. 1968). To be an accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields*, 333 A.2d 745, 747 (Pa. 1975); *Commonwealth v. McFadden*, 292 A.2d 358, 360 (Pa. 1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers*, 387 A.2d 1268, 1270 (Pa. 1978).

*Commonwealth v. Brady*, 560 A.2d 802, 805 (Pa. Super. 1989). However, **"[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice."** *Commonwealth v. Graves*, 463 A.2d 467, 470 (Pa. Super. 1983); *see Commonwealth v. Coccioletti*, 425 A.2d 387, 390 (Pa. 1981).

*Commonwealth v. Calderini*, 611 A.2d 206, 208 (Pa. Super. 1992) (citations modified; emphasis added).

The trial court, without referring to accomplice liability, reasoned as follows:

> The circumstances show that [Petitioner] intentionally put Stewart in fear of immediate serious bodily injury. [Petitioner] was a member of a group that surrounded Stewart. The circumstances show that the group meant to intimidate Stewart . . . .

* * * *

26

[Petitioner's] physical attack on Stewart further shows that [Petitioner] intentionally put Stewart in fear of immediate serious bodily injury. [Petitioner] struck Stewart in the back of the head. Stewart was then hit in the head with a bottle and fell to the floor. While Stewart was on the floor in a defenseless position, [Petitioner] kicked him and stomped him. Stewart testified that he was in the fetal position when the group was beating him. This indicates that Stewart was in fear of immediate serious bodily injury.

Even if [Petitioner] was not the one who threatened to shoot Stewart, [Petitioner] was a member of a group that took action in response to the threat. Stewart testified that when he heard the shooting threat, he believed his life was in danger. Stewart testified that members of the group tried to grab his arms to stand him up. [Petitioner], therefore, intentionally put Stewart in fear of immediate serious bodily injury.

T.C.O. at 5.

The record supports the trial court's account. Stewart testified that [Petitioner] struck him in the head. *See* Notes of Testimony ("N.T."), 10/24/2013, at 44. Stewart further testified that, immediately after [Petitioner] struck him, the group surrounding him, which included [Petitioner], collectively kicked and stomped him until he dropped into the fetal position, whereupon the beating continued. *Id.* at 44-46. Stewart testified that, while he was on the ground, members of the group rifled through his pockets, removing his wallet and mobile phone and attempting in vain to remove his keys, which were attached to him by a chain. *Id.* at 45. While some members of the group were going through Stewart's pockets, some or all of the others continued to strike and kick him. *Id.* at 49. During the group's assault, one "gentleman," as Stewart generously described him, said "stand this MF up so that I can shoot him," which prompted Stewart to fear that his "life was in danger now completely." *Id.* at 48. When the group tired or lost interest, they stopped striking Stewart and poured hot cooking oil on him.

Reviewing this evidence through the lens of our deferential standard of review, we find it sufficient to have enabled the jury to conclude beyond a reasonable doubt that [Petitioner] was guilty, either principally or as an accomplice, of robbery pursuant to subsection 3701(a)(1)(iv). As set forth above, the relevant statute provides that a person commits a robbery if, "in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury." Stewart's testimony (if not the admission tacit in [Petitioner's] decision not to contest the sufficiency of the evidence to sustain his other convictions for robbery and theft by unlawful taking) by itself constituted sufficient evidence to establish that the group committed a theft and that [Petitioner] and/or his cohort (with [Petitioner's] general complicity and general participation) put Stewart in fear of immediate serious bodily injury. The jury was free to credit this testimony. Furthermore, viewed as a whole, the evidence more generally established a basis upon which the jury could conclude beyond a reasonable doubt that [Petitioner] was an active and willing participant in events constituting a robbery based upon the infliction or threat of serious bodily injury: He remained in the group and did not stray during the assault and theft, and he personally struck Stewart. No more was necessary to establish a proper basis for the verdict.

(Doc. No. 16 at 256-65.)

On appeal from the dismissal of his PCRA petition, Petitioner maintained that counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions for robbery pursuant to 18 U.S.C. § 3701(a)(1)(iv) (inflicts injury), theft by unlawful taking, and simple assault. *Williams*, 220 A.3d at 1095. With respect to this claim, the Superior Court stated:

In his final issue on appeal, [Petitioner] contends that counsel was ineffective for failing to challenge, on sufficiency of the evidence grounds, all of his convictions on direct appeal.

On his unsuccessful direct appeal to this Court, appellate counsel challenged the sufficiency of the evidence to support [Petitioner's]

conviction for robbery, pursuant to section 3701(a)(1)(ii), a first-degree felony. *See Commonwealth v. Williams*, No. 1434 MDA 2014, 2015 WL 7433534 (Pa. Super. Filed March 20, 2015) (unpublished memorandum). Thus, we will confine our review to [Petitioner's] remaining convictions—robbery (inflicts bodily injury), theft by unlawful taking and simple assault.

[Petitioner] makes a similar argument to the one he made on direct appeal, that the Commonwealth failed to present sufficient evidence to prove that he committed or attempted to commit a theft. Specifically, he claims that "the jury was left to guess which inferences it will adopt" where the victim never testified he saw [Petitioner] rifle through his pockets and take his personal belongings or physically assault him save for the first punch. Appellant's Brief, at 10. We disagree.

The victim's testimony bears out that [Petitioner] struck the victim in the head and that immediately following that initial punch, the group (including [Petitioner]) surrounded the victim and collectively kicked and stomped on him until he fell into a fetal position. While on the ground, some members of the group went through the victim's pockets, while others continued to strike and kick him, ultimately pouring hot cooking oil on him. As our Court determined on direct appeal:

> [The victim's] testimony . . . by itself constituted sufficient evidence to establish that the group committed a theft and that [Petitioner] and/or his cohort (with [Petitioner's] complicity and general participation) put Stewart in fear of immediate serious bodily injury.

*Id.* at 13. Based on the trial testimony, we agree that a jury could conclude beyond a reasonable doubt that [Petitioner] was an active and willing participant in events constituting robbery under section 3701(a)(1)(iv) and theft by unlawful taking.

Finally, [Petitioner], himself, concedes in his appellate brief that he was guilty of simple assault. *See* Appellant's Brief, at 12 ("[t]he first . . . initial punch and kicks . . . constitutes simple assault."); *id.* at 19 ("Taking an [o]ffense-specific analysis/[f]ocused examination test of

this case at hand, no competent judge or jury would have found
appellant guilty of anything other than the simple assault.").  Thus, we
find this issue meritless.

*Williams*, 220 A.3d at 1095-96.

Petitioner now faults counsel for failing to present a "proper" claim regarding
sufficiency of the evidence.  Petitioner appears to assert that he could not be
convicted of robbery and theft by unlawful taking under a theory of accomplice
liability because he was acquitted of conspiracy.  (Doc. No. 1 at 16-17, 24-29.)  He
also maintains that he was never specifically criminally charged with or found guilty
of accomplice liability because such a theory was not set forth as an option on the
jury verdict slip.  (Doc. No. 18.)

As an initial matter, Petitioner cites no authority, and the Court has located
none, suggesting that he could not be found guilty based upon a theory of accomplice
liability because he was not criminally charged with such and because the jury
verdict slip did not specifically provide for such a finding.  Moreover, in
Pennsylvania, "the substantive crime of criminal conspiracy encompasses that of
accomplice liability with conspiracy having the additional element of an agreement."
*Commonwealth v. Soto*, 693 A.2d 226, 230 (Pa. Super. Ct. 1997).  Accordingly, the
fact that the jury found Petitioner not guilty of conspiracy did not negate a finding
that he was guilty of robbery and theft by unlawful taking pursuant to a theory of
accomplice liability.  *See Commonwealth v. Horton*, 644 A.2d 181, 184 (Pa. Super.

1994) (rejecting appellant's argument that his acquittal on a conspiracy charge negated the jury's verdict of guilty on the robbery charge under the accomplice liability theory); *Commonwealth v. Troy*, 553 A.2d 992, 996 (1989) (noting that "the law does not require consistency in criminal verdicts so long as the evidence is sufficient to support the guilty verdict rendered").  Thus, Petitioner's arguments lack merit, and counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

In sum, upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of this claim was contrary to, or was an unreasonable application of, United States Supreme Court precedent.  Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable.  The state courts reasonably concluded that the evidence presented at trial was sufficient to sustain Petitioner's convictions and that counsel was not ineffective for failing to argue or present further argument with respect to such. Accordingly, Ground Three will be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.   28 U.S.C.

§ 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable.  As such, no COA will issue.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: October 7, 2020